UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**SHELLEY E. KEELING**                                                                    **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 5:21-CV-57-TBR**

**JEFF HARTMAN et al.**                                                 **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Shelley E. Keeling, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the Court will dismiss some claims and allow others to proceed.

**I. STATEMENT OF CLAIMS**

Plaintiff names as Defendants in their individual and official capacities McCracken County Sheriff's Deputy Jeff Hartman and McCracken County Sheriff Matt Carter. He also sues McCracken County, Kentucky.

Plaintiff alleges that on or about May 20, 2020, after he pulled his car into a loading zone at a Walmart, he was approached by Defendant Hartman. He states that Defendant Hartman can be seen on surveillance video "grabbing Mr. Keeling by his neck and slamming him against his vehicle." He states that he did not receive a citation at the scene. According to the complaint, Plaintiff attempted to file a complaint with the Sheriff's Office against Defendant Hartman. Plaintiff alleges that when Defendant Hartman learned about the complaint, he charged him with third-degree assault. Plaintiff states that Defendant Carter is responsible for supervising

Defendant Hartman and that McCracken County is responsible for the oversight of the McCracken County Sheriff's Department.

Plaintiff alleges violations of his Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. He also raises claims under the Kentucky Constitution, as well as state-law torts of assault/battery, abuse of process, malicious prosecution, official misconduct, and "vicarious liability/*respondeat superior*."

Prior to this screening, the Court ordered Plaintiff to provide information concerning the state charges against him (DN 5). In response (DN 6), Plaintiff explains that the state criminal charge of third-degree assault arising from the incident in the Walmart parking lot has been dismissed.

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. *See* § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 608-09. Upon review, this Court must dismiss a case at any time if the Court determines that the action is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. § 1915(e)(2)(B). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Section 1983 claims

   1.   Fifth Amendment

The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in

> the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

The only two clauses of this Amendment possibly at issue given Plaintiff's allegations are the self-incrimination clause and the due-process clause. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the prohibition against compelled self-incrimination requires a custodial interrogation to be preceded by advice that the accused has the right to remain silent, that any statement may be used against him, and that he has the right to counsel. *Id*. at 479. However, Plaintiff does not allege that he was not given a *Miranda* warning. In any event, a "mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights[.]" *United States v. Patane*, 542 U.S. 630, 641 (2004). Plaintiff also does not allege that he was compelled to give any statements, but, even if he did, he does not allege that his compelled statements were used in a criminal case against him. Because "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness," *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion, Plaintiff fails to state a claim under the self-incrimination clause.

Additionally, "the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Adkins v. Payton*, No. 4:09-CV-P8, 2009 WL 1949071, at *3 n.1 (W.D. Ky. Jul. 7, 2009). Because this case involves a municipal government, Plaintiff cannot state a Fifth Amendment due-process claim. *See, e.g.*, *Austin v. Jochem*, No. 4:20-CV-00035-JHM, 2021 WL 5496863, at *3 (W.D. Ky. Nov. 23, 2021). Accordingly, Plaintiff's Fifth Amendment claim will be dismissed.

*2.     Eighth Amendment*

The Eighth Amendment claim must be dismissed because the Eighth Amendment is not implicated unless a plaintiff has been convicted.  As the Supreme Court articulated in *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."  *Bass v. Robinson*, 167 F.3d 1041, 1048-49 (6th Cir. 1999) ("[B]ecause the alleged misconduct occurred prior to Plaintiff's conviction, the Eighth Amendment was not implicated.").  Here, Plaintiff was not convicted, and he fails to state an Eighth Amendment claim.

*3.     Fourth and Fourteenth Amendment*

The Court presumes, given the complaint's allegations, that Plaintiff wishes to assert a substantive due-process claim under the Fourteenth Amendment.  Generally speaking, the Fourteenth Amendment prohibits "executive abuse of power . . . which shocks the conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *see also Rochin v. California*, 342 U.S. 165, 172-73 (1952) (finding that police conduct shocks the conscience where it violates the "decencies of civilized conduct.").  Here, Plaintiff's claim fails because "the more generalized notion of 'substantive due process'" must give way when the Constitution "provides an explicit textual source of constitutional protection[.]"  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  That is, the Fourth Amendment's protection against unreasonable seizures governs "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen."  *Id.* (emphasis in original).  Therefore, Plaintiff's Fourteenth Amendment claim is more properly analyzed under the Fourth Amendment.

The Court will allow Plaintiff's Fourth Amendment excessive-force claim to continue against Defendant Hartman in his individual capacity.

    4.    *§ 1983 claims against McCracken County and official-capacity claims against Defendants Harman and Carter*

The official-capacity claims against Defendants Hartman and Carter are actually brought against McCracken County because official-capacity claims must be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, the claims against these Defendants in their official capacities are actually brought against the McCracken County government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like McCracken County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Here, Plaintiff identifies no McCracken County policy or custom behind the alleged constitutional violations. The Court will dismiss the official-capacity § 1983 claims, as well as the § 1983 claims against McCracken County.

5. *Individual-capacity claim against Defendant Carter*

Plaintiff alleges that Defendant Carter is responsible for supervising Defendant Hartman. However, the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors like Defendant Carter. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir.1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869,

872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir.1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Plaintiff alleges no active unconstitutional behavior by Defendant Carter. Accordingly, the Court will dismiss the individual-capacity § 1983 claim against Defendant Carter.

**B. State-law claims**

The Court will allow Plaintiff's state-law claims to continue with the exception of his claims under the Kentucky Constitution and for official misconduct.

Plaintiff alleges violations of Sections 10, 11, and 12 of the Kentucky Constitution. However, Kentucky law does not recognize a private cause of action under the Kentucky Constitution. *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 615 (W.D. Ky. 2011); *see also Davies v. Trigg Cty., Ky.*, No. 5:16-CV-00068-TBR, 2016 WL 7105931, at *11 (W.D. Ky. Dec. 5, 2016) ("This Court has rejected claims arising under the Kentucky Constitution on multiple prior occasions, and it does so again today.").

And, "[w]hile the Kentucky Penal Code lists 'official misconduct in the first degree' as a criminal offense, KRS 522.020, neither the Kentucky Revised Statutes nor Kentucky case law recognize a corresponding tort law claim for 'official misconduct.'" *Madden v. Calvert*, No. 1:16-CV-P147-GNS, 2017 WL 4366746, at *6 (W.D. Ky. Sept. 29, 2017) (footnote omitted).

Consequently, Plaintiff's claim under the Kentucky Constitution and for official misconduct must be dismissed for failure to state a claim.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Fifth, Eighth, and Fourteenth Amendment claims; the official-capacity claims; the § 1983 claims against Defendant Carter and McCracken County; and the claims under the Kentucky Constitution and for official misconduct are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(b)(2).

**IT IS FURTHER ORDERED** that on preliminary review the Court will allow Plaintiff's Fourth Amendment excessive-force claim against Defendant Hartman in his individual capacity as well as his state-law claims of assault/battery, abuse of process, malicious prosecution, and "vicarious liability/*respondeat superior*" to continue against all Defendants.

Accordingly, **IT IS ORDERED** as follows:

(1) The summons forms Plaintiff tendered do not contain addresses for Defendants. Accordingly, Plaintiff must completely fill out the summons forms and return them to the Court within **30 days** of entry of this Order.

(2) Once the Court receives the completed summons forms, the Clerk of Court shall issue summons and effect service of process on Defendants by way of the U.S. Marshals Service in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(c)(3).

(3) The parties shall serve upon opposing parties, or their counsel, a copy of each document filed in this action as required by the Federal Rules of Civil Procedure, including a certificate of service, if required. *See* Fed. R. Civ. P. 5.

(4) Plaintiff must provide written notice of a change of address to the Clerk and to Defendants' counsel.  *See* Local Rule 5.3(e).

(5) Plaintiff's failure to notify the Clerk of any address change or failure to comply with this or any subsequent Order of the Court may result in a dismissal of this case.

(6) The Clerk of Court is **DIRECTED** to send to Plaintiff a copy of the *Pro Se* Handbook.

Date: March 21, 2022

Thomas B. Russell, Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants (as directed above)
      McCracken County Attorney
4413.009